# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PEDRO VELEZ, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 21-cv- ) ) |
| ABSOLUTE RESOLUTIONS INVESTMENTS, LLC, and ABSOLUTE RESOLUTIONS CORPORATION, | ) ) ) ) |
| Defendants. | ) Jury Demanded ) ) ) |

## COMPLAINT

Plaintiff, Pedro Velez, brings this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"), and alleges:

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to § 1692k(d) of the FDCPA, and 28 U.S.C. § 1331.

2. Venue is proper in this District because parts of the acts and transactions occurred here and Defendants transact substantial business here.

## STANDING

3. Plaintiff has suffered an injury in fact that is traceable to Defendants' conduct and that is likely to be redressed by a favorable decision in this matter.

4. Plaintiff suffered a concrete injury and harm as a result of the invasion of his privacy as he was represented by counsel and Defendants contacted him directly.

**PARTIES**

5. Plaintiff, Pedro Velez ("Plaintiff"), is a resident of the State of Illinois, from whom Defendant attempted to collect a consumer debt owed for a defaulted Citibank N.A. account. Plaintiff is thus a "consumer" as that term is defined in 15 U.S.C. § 1692a(3) of the FDCPA.

6. Defendant Absolute Resolutions Investments ("ARI"), is an Arizona limited liability company that does or transacts business in the State of Illinois. Its registered agent is URS Agents, LLC, located at 100 N LaSalle Street, Suite 500, Chicago, Illinois 60602.

7. ARI holds a collection agency license from the State of Illinois.

8. ARI purchases defaulted consumer debts and uses Defendant ARC to collect them.

9. ARI's principal business purpose is the collection of defaulted consumer debts, as it derives all of its revenue from purchasing and recovering portfolios of defaulted receivables from consumers.

10. ARI is thus a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

11. Defendant Absolute Resolutions Corporation ("ARC") is a California corporation that does or transacts business in Illinois. Its registered agent and office is Illinois Corporation Service C, 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

12. ARC is engaged in the business of a collection agency, its principal purpose is the collection of any debts, and it uses the phones or any instrumentality of interstate commerce to achieve its purpose of collecting debts.

13. ARC collects debts on behalf of ARI.

14. On information and belief, ARC regularly files lawsuits against consumers in state courts across the country in an attempt to collect on the defaulted consumer debts it has purchased or claims to have purchased or that ARI has purchased.

15. ARC holds a collection agency license from the State of Illinois and is a Licensed Collection Agency, and attempts to collect debts originally owed to others.

16. ARC is a "debt collector" as defined in in 15 U.S.C. § 1692a(6) of the FDCPA, and a "Collection Agency" as that term is defined at 225 Ill. Comp. Stat. 425/2

## FACTUAL ALLEGATIONS

17. According to Defendants, Plaintiff incurred a debt for goods and services used for personal family or household purposes, originally for a Citibank N.A. consumer account used for personal purposes ("Account"). The debt is thus a "debt" as that term is defined at § 1692a(6) of the FDCPA.

18. Plaintiff did not pay the account and the debt went into default.

19. Thereafter, ARI attempted to collect the account from Plaintiff via ARC.

20. In response to collection attempts by ARC, Plaintiff retained the services of Community Lawyers, LLC., who on February 11, 2021 sent a letter to ARI, indicating that Plaintiff was represented by an attorney. (Exhibit A, Representation Letter).

21. ARC received Plaintiff's Letter on February 15, 2021, and subsequently marked the account as "disputed by consumer" on Plaintiff's credit reports, as required by law.

22. On May 13, 2021, on Plaintiff's behalf, Plaintiff's attorneys sent a letter to ARC stating Plaintiff had been affected by the Covid-19 natural disaster. (Exhibit B, Disaster Letter).

23. ARC received Plaintiff's Letter on May 18, 2021.

24. ARC had now been informed twice, by certified mail, that Plaintiff was represented by counsel.

25. Nevertheless, on June 17, 2021, ARC sent Plaintiff a letter at his home regarding his account. (Exhibit C, Collection Letter).

26. The Letter conveyed information regarding the account, including the identity of the creditor, an account number, and an amount owed on the account.

27. The Letter was thus a communication as that term is defined at § 1692a(2) of the FDCPA.

28. The Letter states that Defendants will be conducting an investigation of Plaintiff's account.

29. The Letter then threatens that, based on the results of that investigation, it may report his account to the credit bureaus.

30. The Letter was thus in connection with the collection of a debt.

31. Plaintiff had been assured by his attorney that once he was represented, he would no longer have to engage with debt collectors on his own.

32. Now he was in receipt of a letter directly from the debt collector.

33. Defendant's letter robbed Plaintiff of the benefit of having an attorney and made him afraid that the protections promised by his attorney did not apply.

34. Defendant invaded Plaintiff's privacy by reaching out to him directly.

35. Plaintiff was confused and believed that ARC now had the right to contact him, despite the fact that it did not.

36. An unsophisticated consumer would have believed that Defendant could now contact him regardless of whether he was represented by an attorney.

37. Plaintiff suffered emotional distress at being contacted by debt collectors, despite being told he would not. He experienced anxiety, a rapid heartbeat and sleeplessness at the prospect of having to engage with the collectors himself and without the protection of his lawyer.

38. Defendant knew or should have known that Plaintiff was represented by counsel because ARC received notice on February 15, 2021 and again on May 18, 2021 stating that Plaintiff had acquired legal representation.

39. 15 U.S.C. § 1692c(a) of the FDCPA provides as follows:

> (a) **Communication with the consumer generally**
>
> **Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—**
>
> **. . . (2) <u>if the debt collector knows the consumer is represented by an attorney with respect to such debt</u> and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer. . . .**

(emphasis added)

40. Defendant communicated with a consumer directly, in violation of 15 U.S.C. §1692c(a)(2), while knowing the consumer was represented by an attorney.

41. Defendants' collection communications are to be interpreted under the "unsophisticated consumer" standard. *See*, *Gammon v. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

## COUNT I – FAIR DEBT COLLECTION PRACTICES ACT

42. Plaintiff re-alleges and incorporates the above paragraphs into this count.

43. Defendants communicated with a consumer directly, in violation of 15 U.S.C. §1692c(a)(2), while knowing the consumer was represented by an attorney.

WHEREFORE, Plaintiff asks that this Court enter judgment in his favor and against Defendants as follows:

    A. Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

    B. Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2);

    C. Costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3); and

    D. Such other or further relief as this Court deems proper.

## JURY DEMAND

Plaintiff demands trial by jury.

By: s/ Paúl Camarena
One of Plaintiff's Attorneys

Paúl Camarena, Esq.
500 So. Clinton St., No. 132
Chicago, IL 60607
(312) 493-7494
paulcamarena@paulcamarena.com

Michael Wood
Celetha Chatman
**Community Lawyers LLC**
980 N Michigan Ave, Suite 1400
Chicago, IL 60611
Ph: (312) 757-1880
Fx: (312) 265-3227
cchatman@communitylawyersgroup.com

# EXHIBIT A

Community Lawyers LLC
20 N. Clark St.
STE 3100
Chicago IL 60602



USPS CERTIFIED MAIL

9214 8901 4298 0458 5063 39

0004015874000011
BLITT & GAINES P C
775 CORPORATE WOODS
VERNON HILL IL 60061

# See Important Information Enclosed

## Community Lawyers LLC
20 N. Clark Street, Suite 3100
Chicago, Illinois 60602
(312) 265-3227

**SENT VIA CERTIFIED MAIL**

February 11, 2021

BLITT & GAINES P C
775 CORPORATE WOODS
VERNON HILL IL, 60061

Re: *PEDRO VELEZ*

*DEBT BUYER: ABSOLUTE RESOLUTIONS INVESTMENTS*
*ACCOUNT:* ▮▮▮▮▮ *(CITIBANK N A)*
*CURRENT REPORTED AMOUNT OF DEBT: $8,521.00*

Dear Sir or Madam:

The above referenced client is represented by our firm regarding all matters in connection with the above referenced debt, please direct any future communication regarding this account to our office. This client is insolvent, as their monthly expenses exceed the amount of income they receive, and the amount reported is not accurate. If their circumstances should change, we will be in touch.

If you wish to discuss this matter, please contact our office directly by fax at (312) 265-3227 to reach the attorney assigned to the matter, Michael Wood.

Sincerely,
/s/ Michael Wood

Client Name:

*PEDRO VELEZ*

# EXHIBIT B

Community Lawyers LLC
20 N. Clark St.
STE 3100
Chicago IL 60602



USPS CERTIFIED MAIL

9207 1901 4298 0460 3802 18

0004491995000011
Absolute Resolutions Investments
8000 Norman Center Dr Suite 350
Bloomington MN 55437

**See Important Information Enclosed**

**SENT VIA CERTIFIED MAIL**

May 13, 2021

Absolute Resolutions Investments
8000 Norman Center Dr Suite 350
Bloomington, MN 55437

RE:    *Pedro Velez*

*ACCOUNT:* ▆▆▆▆▆▆ *(Citibank N A)*
*CURRENT AMOUNT OF DEBT: $8,521.00*

Hi, please consider temporarily suspending collection and reporting of this debt. My client is currently affected by the Covid-19 natural disaster and negative credit reporting makes it more difficult to seek short-term loans and other assistance, which already tend to be very expensive.

For guidance on collection of debts in our state, please see the IDFPR Covid-19 Best Practices guidance, pasted in full below and also linked directly.

Specifically, please note the timing of these guidelines, which continues for several months after the term of the Disaster Proclamation, the use of the AW code (should you decide to continue reporting during this time) and the waiver of any finance charges should you decide to defer payments. Note that the Disaster Proclamation continues to be renewed every thirty days.

My client previously disputed the accuracy this debt, thus an amenable option for both of us would be to simply delete the tradeline. Please continue to make sure to direct all contact regarding this account to my office.

**********************

Consumer Credit Licensees – COVID-19 Best Practices

JB Pritzker, Governor of Illinois, declared all counties in the State of Illinois as a disaster area on March 9, 2020 in response to the outbreak of Coronavirus Disease 2019 ("COVID-19") and again on April 1, 2020 ("Gubernatorial Disaster Proclamations"). The Gubernatorial Disaster Proclamations extend at least through April 30, 2020. As it develops, the COVID-19 pandemic will continue to present many yet to be determined challenges for consumer credit licensees and their customers, Illinois consumers.

During this crisis, the Department of Financial and Professional Regulation (Department) reminds all consumer credit licensees that they are required to comply with any Executive Order issued by the Governor of Illinois or other federal, state, or local mandate regarding the origination, servicing, or collection of consumer debt including, but not limited to Executive Order 2020-16, which suspends the provisions of the Uniform Commercial Code, 810 ILCS 5/9-609, regarding the possession or usability of a vehicle, and the provisions of the Illinois Vehicle Code, 625 ILCS 5/3-114, regarding the repossession of vehicles, through at least April 30, 2020.

In addition to complying with these mandates, the Department expects Illinois consumer credit licensees to work proactively with consumers during this crisis, and to be flexible with repayment of debt.
During the Gubernatorial Disaster Proclamation and for the next several months after the term of the final Gubernatorial Disaster Proclamation, the Department recommends licensees follow the best practices described below to assist consumers impacted by the crisis:

- Increase communication with consumers and provide multiple, easily accessible methods for consumers to contact the business, especially if the business has altered operations due to COVID-19.
- Proactively reach out to consumers to offer payment options, including deferred or partial payments, which would avoid delinquencies and negative credit reporting.
- Waive all late charges and finance charges that might result from a payment deferment or partial payments.
- Waive non-sufficient funds fees for dishonored payments or unsuccessful ACH withdrawals.
- Consider suspension of debt collection efforts for consumers negatively impacted by COVID-19.
- Proactively reach out to customers on automatic payment plans and, upon request of the consumer, temporarily suspend theseautomatic repayment plans and place the consumer in forbearance without fees or interest.
- Proactively reach out to customers who have granted wage assignments and, upon the request of the consumer, revoke any wage assignment action and place the consumer in forbearance without fees or interest.
- Ensure sufficient staffing of customer service phone lines and alternative methods of providing customer service support.
- Give borrowers the option to voluntarily surrender collateral with no deficiency.
- To the extent legally permissible, use the already available natural disaster code and report the account as current or deferred.

The above are recommendations on best practices from the Department that will serve the best interests of consumers and licensees.

These recommendations do not alter any applicable law, and nothing in this document shall be interpreted as conflicting with or superseding any federal, state, or local mandate.

Licensees are further advised that the Department will carefully examine lending and collection activity during the COVID-19 crisis. Licensees found engaging in unlawful conduct that harms consumers during this crisis will be subject to prompt and significant discipline by the Department. Discipline may include the imposition of fines and, if appropriate, license suspension, or revocation.

Written and Signed By:

_____

David Berland

Deputy General Counsel, Chief Counsel of the Division of Financial Institutions

Approved by:

Francisco Menchaca

Director, Division of Financial Institutions

Dated: April 14, 2020

*******************

https://www.idfpr.com/Forms/COVID19/2020%2004%2014%20DFI%20Best%20Practices.pdf


Thank you,

Michael J. Wood, Attorney at Law
Community Lawyers LLC
20 N. Clark St., STE 3100
Chicago, IL 60602
Fax: (312)265-3227
Email: admin1@communitylawyersgroup.com

# EXHIBIT C

8000 Norman Center Drive, #350
Bloomington, MN 55437

**ARC**

Toll Free 888-766-4028, TTY 800-877-8339
Hours: M - F 9am - 5pm CT

06/17/2021

PEDRO VELEZ

Current Owner: Absolute Resolutions Investments, LLC
Current Owner Account Number:
Original Creditor: Citibank, N.A.
Original Creditor Account Number:

Dear PEDRO VELEZ:

As Records Custodian for Absolute Resolutions Investments, LLC we are writing solely to respond to your dispute pursuant to federal credit reporting laws. The purpose of this letter is to advise you pursuant to the Fair Credit Reporting Act that we need more time to investigate your dispute of the credit reporting of the above-referenced account. Until we are able to respond to your dispute, we have requested that the credit reporting agencies delete the credit reporting of the above-referenced account. We are not responsible for and have no control over whether or how long it takes for credit reporting agencies to update your credit report. We will update you upon completion of our investigation and may resume credit reporting of the above-referenced account upon our completion of our investigation. We anticipate our investigation of your dispute will be completed within seven (7) business days.

If you have additional documentation or information regarding your dispute, please contact us at:

Absolute Resolutions Corporation (ARC)
Attention: Compliance
8000 Norman Center Drive, #350
Bloomington, MN 55437
info@absoluteresolutions.com

Sincerely,

ARC's Compliance Team

While this communication is from a debt collector, this is not an attempt to collect a debt, but is solely to respond to your dispute pursuant to federal credit reporting laws.