UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PEDRO VELEZ, | ) |
| Plaintiff, | ) ) ) |
| | ) No. 21 C 3912 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| ABSOLUTE RESOLUTIONS INVESTMENTS, LLC and ABSOLUTE RESOLUTIONS CORPORATION, | ) ) ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff Pedro Velez brings this action against Absolute Resolutions Investments, LLC ("ARI") and Absolute Resolutions Corporation ("ARC") (collectively, "Defendants"), under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"), alleging that ARC sent Velez a letter about an unpaid debt after ARC knew that Velez was represented by counsel. The parties have filed cross-motions for summary judgment. Because the letter cannot be considered a debt-collection communication, Velez cannot prevail on his FDCPA claim, and the Court enters summary judgment for Defendants and against Velez.

### BACKGROUND[1]

ARI and ARC are collection agencies and "debt collectors" under the FDCPA. ARI regularly works with ARC to collect debts. ARI acquired Velez's defaulted consumer debt. ARI retained the law firm Blitt & Gaines, PC ("B&G") to collect on the debt. Velez retained

---

[1] The Court derives the facts in this section from the Joint Statement of Undisputed Material Facts. The Court has considered Velez's objections to Defendants' additional exhibits and has included in this background section only those portions of the record that are appropriately presented, supported, and relevant to resolution of the pending motion for summary judgment. All facts are taken in the light most favorable to the non-movant in each motion.

Community Lawyers, LLC ("Community Lawyers") to assist him with the debt.

In February 2021, Community Lawyers sent a letter to B&G on Velez's behalf, stating that Velez was represented by an attorney and that Velez disputed the debt. B&G notified ARI of Community Lawyer's letter about a week later by uploading it into ARI's account management system. Despite receiving the letter, Defendants' employees did not place a "Contact Append" code (which would allow ARI to upload the attorney representation and contact information) or a "Special Handling" code on Velez's account. These codes would have informed anyone servicing the account of the updated contact information and handling instructions.

In mid-May 2021, Community Lawyers sent another letter to ARI on Velez's behalf. This letter, again signed by Velez's attorney and sent from the attorney's office, requested that ARI stop collection and reporting of the disputed debt because Velez had been affected by the COVID-19 crisis. When ARI received the letter on May 18, 2021, it suspended collection on Velez's account and opened an investigation.

On June 17, 2021, ARC, acting as records custodian for ARI, sent Velez (not his lawyers) a letter, that stated:

> [W]e are writing solely to respond to your dispute pursuant to federal credit reporting laws. The purpose of this letter is to advise you pursuant to the Fair Credit Reporting Act that we need more time to investigate your dispute of the credit reporting of the above-referenced account. Until we are able to respond to your dispute, we have requested that the credit reporting agencies delete the credit reporting of the above referenced account. We are not responsible for and have no control over whether or how long it takes for credit reporting agencies to update your credit report. We will update you upon completion of our investigation and may resume credit reporting of the above-referenced account upon our completion of our investigation. We anticipate our investigation of your dispute will be completed within seven (7) business days.

> If you have additional documentation or information regarding your dispute, please contact us at: [ . . .].
>
> While this communication is from a debt collector, this is not an attempt to collect a debt, but is solely to respond to your dispute pursuant to federal reporting laws.

Doc. 35-8 at 2.

On July 16, 2021, Defendants added the "Contact Append" and "Special Handling" codes to Velez's account and sent no further communications to Velez or his lawyers after that date. Velez filed this lawsuit on July 22, 2021. Doc. 1.

After receiving the June 2021 letter, Velez states that he "felt harassed, stressed out, hopeless, and anxious." Doc. 38 ¶ 29. Velez also testified that he "lost clients and job opportunities because of the way that [he] was feeling" from the letter. *Id.* ¶ 30. Velez did not seek medical treatment and does not have documentation or physical evidence of his claimed injuries.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above

3

to identify specific material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013). However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture,'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted).

## ANALYSIS

### I. Standing

Defendants challenge Velez's standing to bring this lawsuit, arguing that he lacks an injury-in-fact sufficient to confer Article III standing. Article III standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). At the summary judgment stage, "the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts'" supporting each element of standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

In *Spokeo*, the Supreme Court held that "Article III standing requires a concrete injury even in the context of a statutory violation." 136 S. Ct. at 1549; *see also Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017) (no standing for "a statutory violation completely removed from any concrete harm or appreciable risk of harm"). Regardless of the

4

nature of the FDCPA violation (procedural or substantive), a plaintiff "must allege (and later establish) that the statutory violation harmed him 'or presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect.'" *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1066 (7th Cir. 2020) (quoting *Casillas v. Madison Avenue Assoc., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019)).

The Seventh Circuit's recent FDCPA standing decisions make clear that stress and annoyance do not amount to concrete harm for standing purposes. *See Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021) ("Nor does stress by itself with no physical manifestations and no qualified medical diagnosis amount to a concrete harm."); *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069, 1071 (7th Cir. 2020) ("[A] sense of indignation (=aggravated annoyance) is not enough for standing."). Instead, "[a] debtor confused by a dunning letter may be injured if she acts, to her detriment, on that confusion—if, for example, the confusion leads her to pay something she does not owe, or to pay a debt with interest running at a low rate when the money could have been used to pay a debt with interest running at a higher rate." *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068 (7th Cir. 2020). Velez's allegations of stress, anxiety, and sleeplessness, without more, do not establish an injury in fact.

Similarly, the expense and effort of hiring a lawyer does not qualify as injury in fact for FDCPA standing purposes. *See Gunn*, 982 F.3d at 1072 ("No one can doubt that the plaintiff in *Spokeo* was sore annoyed. If that were enough, however, then the very fact that a suit had been filed would show the existence of standing, and the need to have a concrete injury that could be cured by a favorable judicial decision would be abolished."); *Brunett*, 982 F.3d at 1069 ("A desire to obtain legal advice is not a reason for universal standing.").

5

Velez argues, however, that he also suffered financial harm because the stress prompted him to refuse freelance work that he ordinarily would have performed. *See* Doc. 38 ¶ 30. Defendants do not substantively challenge Velez's testimony about this financial loss; therefore, the Court finds that Velez has shown standing sufficient to survive summary judgment. *See Brown v. Weltman, Weinberg & Reis Co., L.P.A.*, No. 21 C 1120, 2021 WL 3910748, at *2 (N.D. Ill. Sept. 1, 2021) ("It is a reasonable and plausible inference from Brown's allegations that she actually lost money—income she otherwise would have earned from self-employment—as a result of her receipt of Weltman's collection letter. This economic harm differentiates Brown's case from the intangible harm in the cases relied upon by Weltman and suffices as an allegation of concrete injury for purposes of Article III standing.").

## II. Communication Under the FDCPA

Velez's complaint contains a single claim: that, in sending the June 2021 letter to him instead of to his attorneys, Defendants violated FDCPA Section 1692c(a)(2). Defendants first present the threshold argument that this letter is not a "communication in connection with debt collection" as required for an FDCPA lawsuit. The FDCPA "does not apply to every communication between a debt collector and a debtor." *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010). But no "bright-line rule" exists "for determining whether a communication from a debt collector was made in connection with the collection of any debt." *Id*. Instead, the Court must engage in a "commonsense inquiry," considering whether the communication includes a demand for payment, the purpose and context of the communication, and the nature of the parties' relationship. *Id*. at 385; *Ruth v. Triumph P'ships*, 577 F.3d 790, 798 (7th Cir. 2009) (holding that the "in connection with" inquiry is an objective one not subject to the unsophisticated consumer standard). An animating purpose of the communication must be

to induce payment. *See Gburek*, 614 F.3d at 385 ("[A] communication made specifically to induce the debtor to settle her debt will be sufficient to trigger the protections of the FDCPA."); *McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 914 (8th Cir. 2014) (following the Third, Sixth, and Seventh Circuits and concluding that "for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor").

Here, applying the *Gburek* factors, the Court cannot find that the ARC letter amounted to a communication in connection with the collection of a debt. Although the parties' relationship was that of debtor and debt collector, this is not dispositive. *See Ruth*, 577 F.3d at 799. ARC contacted Velez in its capacity as records custodian for ARI in response to Community Lawyer's letter, which asked ARI to stop collection and reporting of the disputed debt. ARC's June 2021 letter does not include a demand for payment, and nothing suggests that the animating purpose of the letter was to induce payment. *See McCready v. Jacobsen*, No. 06-2443, 2007 WL 1224616, at *1 (7th Cir. Apr. 25, 2007) ("We previously have concluded that a letter informing plaintiffs of the current status of their account and demanding no payment was not a communication 'in connection with the collection of any debt' under the FDCPA."); *Bailey v. Nat'l Sec. Servicing Corp.*, 154 F.3d 384, 388–89 (7th Cir. 1998) (finding that letter informing plaintiffs of the "current status" of their account did not make any demand for payment). Nor does the record indicate Defendants actively pursued collection of the debt, either before or after receiving Community Lawyer's letters on Velez's behalf. *See Klein v. Stellar Recovery, Inc.*, No. 4:16 CV 1480 (JMB), 2017 WL 4551526, at *4 (E.D. Mo. Oct. 12, 2017) (in determining whether communication was made in connection with the collection of a debt, noting that defendant was not "aggressively pursuing collection of this debt" and had only contacted plaintiff one other

7

time more than a year before the challenged contact). The letter acknowledged Velez's dispute of the debt, stated that ARC would investigate the dispute, and informed Velez that ARC requested that the credit reporting agencies delete the credit reporting of his account. *See id.* at *3 ("Where a communication is clearly informational and does not demand payment or discuss the specifics of an underlying debt, it does not violate the FDCPA." (citation omitted) (internal alterations omitted)). And, although not dispositive, the letter does include the disclaimer that it "is not an attempt to collect a debt." Doc. 35-8 at 2; *see Gburek*, 614 F.3d at 386 n.3 (explaining that the inclusion of Section 1692e disclosure language does not determine whether the FDCPA applies to a communication). Further, although the letter states that at the end of ARC's investigation it may resume credit reporting on the account, the Court cannot say that the animating purpose of this letter was to collect payment (rather than to acknowledge Velez's dispute). *Gburek*, 614 F.3d at 384 (discussing *Bailey*, explaining that a letter containing "merely a description of the current status of the debtor's account" was not a collection letter). Taking all these factors into consideration, the Court concludes that ARC did not send the June 17, 2021, letter in connection with the collection of a debt such that the FDCPA would apply. This means Velez cannot prevail on his FDCPA claim.[2]

---

[2] Because this argument is dispositive, the Court does not consider the parties' other arguments in support of their summary judgment motions.

**CONCLUSION**

For the foregoing reasons, the Court grants Defendants' motion for summary judgment [33] and enters judgment for Defendants on Velez's complaint. Velez's motion for summary judgment [36] is denied. The Court terminates as moot all other pending motions [37, 44]. Case terminated.

Dated: October 31, 2022

                                                        SARA L. ELLIS
                                                        United States District Judge